POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 13-16155-B-7 |
| | ) | |
| Michael Weilert and | ) | DC No. MCW-1 |
| Genevieve M. de Montremare, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

**MEMORANDUM DECISION REGARDING MOTION TO DISQUALIFY**

Marshall Whitney, Esq., of McCormick, Barstow, Sheppard, Wayte & Carruth LLP, appeared on behalf of Wild, Carter & Tipton.

Mandy L. Jeffcoach, Esq., of McCormick, Barstow, Sheppard, Wayte & Carruth LLP, appeared on behalf of Wild, Carter & Tipton.

Peter L. Fear, Esq., of the Law Offices of Peter L Fear, appeared on behalf of the chapter 7 trustee, James E. Salven.

Daniel B. Spitzer, Esq., of the Law Offices of Daniel B. Spitzer, appeared on behalf of special counsel to chapter 7 trustee, James E. Salven.

This disposition is not appropriate for publication however may be cited for whatever persuasive value it may have (*see* Fed. R.App. P. 32.1).

In this case, a creditor-law firm is being sued by the trustee for alleged legal malpractice in its representation of the debtors in pre-petition litigation. The creditor-law firm seeks to have the trustee's special counsel in that malpractice case (the creditor-law firm's adversary in the underlying litigation) disqualified because of inadequate disclosures and potential conflicts of interest. The necessary disclosures having now been made (albeit late) and the court not convinced that an actual conflict of interest with the estate currently exists, the motion to disqualify the trustee's special counsel (the "Motion") will be denied.

**INTRODUCTION**

Professionals retained by a bankruptcy estate are subject to disqualification and other sanctions if the court finds that, at any time before or during employment, the professional holds or represents an interest adverse to the estate or is not "disinterested." 11 U.S.C. § 327(a).[1]  A narrow "safe harbor" spares a professional the "dooms day" sanction of disqualification based solely on the fact that the professional represents a creditor of the bankruptcy estate.  § 327(b).  However, if another creditor or the U.S. Trustee objects, the court must disapprove or disqualify the professional if there is an actual conflict of interest.  § 327(c).  Employment of special counsel is further treated in § 327(e).  Where a trustee seeks to retain, "for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  This section has been analogized in case law to be applicable where such representation was of a creditor. In order to assess whether a professional should be, or continue to be, employed by the estate, the Federal Rules of Bankruptcy Procedure impose on the professional strict and continuing duties of complete candor, to the court and other interested parties, to disclose any "connections" the professional has with the debtor, creditors, any other party in interest and others under pain of disqualification and possibly fee disallowance or disgorgement.  Rule 2014.

For the reasons set forth below, the court will deny the Motion.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

**FACTS**

A.      Pre-petition Events

Dr. Michael Weilert and Genevieve M. de Montremare formed the M&G Weilert
Family Limited Partnership.  Dr. Weilert and Ms. Montremare and the Family Limited
Partnership shall  collectively be referred to as "Debtors."  The Debtors owned a 15 acre
ranch in Parlier, California (the "Ranch").  In May 2008, Brian L. Gwartz and Cheryl A.
Skigin, individually and as co-trustees of the Pendragon Trust (hereinafter "Pendragon"),
purchased the Ranch from the Debtors.  Pendragon purchased the Ranch for use by Brian
Gwartz in boarding, training, and breeding Friesian horses, and the adequacy of the
Ranch's facilities for these uses was important to Brian Gwartz' desire to train for
equestrian competition.  Pendragon's other prominent consideration was the international
reputation of debtor Genevieve M. de Montremare and her dedication to the breeding
and promotion of the Friesian breed before her alleged death in November 2007, who
had been portrayed by Dr. Weilert as the heiress to her dynastic family's fortune. Soon
after the sale, Pendragon claimed that Dr. Weilert misrepresented the derivation and
condition of the Ranch.

When Pendragon confronted Dr. Weilert with his apparent misrepresentations, he
refused to negotiate.  Pendragon retained the Dowling, Aaron, Inc. ("DAI") law firm to
obtain necessary permits to repair or construct certain buildings on the Ranch.  Initially,
Pendragon did not wish to litigate but eventually DAI filed and prosecuted a lawsuit on
Pendragon's behalf against the Debtors (the "Ranch Litigation").  In April 2010, the law
firm of Wild, Carter & Tipton ("WCT") became counsel for the Debtors.  Mediation
overtures by Pendragon were rebuffed by WCT on behalf of the Debtors.  Frustrated by
that fact and other alleged problems in DAI's representation of Pendragon, in April 2011
Pendragron replaced DAI with attorney Daniel B. Spitzer, Esq. (hereinafter "Attorney
Spitzer" or "Spitzer").  Following discovery, numerous pleading motions and at least one
motion for summary judgment in the Fresno County Superior Court (the "State Court"),
the trial of the action between Pendragon and the Debtors began in September 2012.

3

After over 21 trial days, on October 25, 2012, the State Court jury found the Debtors liable on all counts, including those of intentional fraud and concealment. The punitive damage phase began four days later. The jury awarded a total judgment of $1,553,800. Of that sum, $850,000 was punitive damages. The State Court stayed enforcement of the Pendragon judgment pending resolution of post-trial motions. During that stay, the Debtors made several transfers of assets that were documented by their attorney, WCT. The post-trial motions filed by the Debtors were denied by the State Court. The Debtors filed an appeal of the judgment in December 2012 but did not seek a stay of enforcement or file an undertaking.

In late May 2013, Pendragon obtained a post-judgment charging order, turnover order, and assignment order from the State Court. The Debtors filed a petition for a writ in the California Court of Appeal challenging those orders and sought a stay of enforcement. The writ was summarily denied on June 7, 2013.

B.    The Bankruptcy Filings and Early Bankruptcy Litigation

After the writ was denied, the Debtors filed a chapter 11 bankruptcy case on behalf M&G Weilert Family Limited Partnership and the case was assigned to Judge Lee.[2] Attorney Spitzer, Pendragon's counsel, appeared before Judge Lee in the related adversary proceeding to oppose a motion for a temporary restraining order and order to show cause regarding preliminary injunction. Attorney Spitzer submitted a declaration in that litigation detailing, *inter alia*, his role as counsel for Pendragon in the Ranch Litigation. In July 2013, Attorney Spitzer filed a motion to dismiss or convert the Debtors' chapter 11 case. The record on that motion included a declaration in support of the motion detailing facts about Attorney Spitzer's role as trial counsel in the Ranch Litigation.[3] Subsequently, the M&G Weilert Family Limited Partnership chapter 11 case

---

[2] U.S. Bankruptcy Court, Eastern District of California, No. 13-14036.

[3] See Adversary Proceeding No. 13-01066 (Doc. 20 and 29).

4

was dismissed.  Thereafter, the Debtors filed two chapter 7 cases which were assigned to Judge Lee and substantively consolidated.[4]  James Salven was appointed chapter 7 trustee (the "Trustee"), and he retained Peter Fear, Esq., as his general counsel ("General Counsel").

C.    Appointment of Attorney Spitzer and Motion to Disqualify

Sometime in August 2014, the Trustee was made aware of a potential malpractice action by the Debtors' bankruptcy estate (the "Bankruptcy Estate") against the Debtors' former counsel, WCT.[5]  After a search of nearly six months, the only attorney the Trustee could find willing to undertake the representation on a financially feasible basis was Attorney Spitzer.[6]  The Trustee signed a retainer agreement on June 9, 2015 (the "Agreement").  The Agreement, which was filed with the employment application, is nine pages long and outlines the terms for payment of fees on a strictly contingency basis with the exception of costs which must be approved by the court before payment.  The Agreement contains disclosures, including Attorney Spitzer's representation of Pendragon: 1) in the underlying Ranch Litigation against the Debtors; 2) in the previous chapter 11 case; 3) in adversary proceedings against the Debtors objecting to their discharge; and 4)  determining dischargeability of debt.  The Agreement also discussed the potential conflict of interest involving Attorney Spitzer's prior representation of Pendragon and the fact that Attorney Spitzer could be a potential witness in the Bankruptcy Estate's malpractice litigation against WCT (the "WCT Malpractice Action").

On June 11, 2015, both the Trustee's application for an order authorizing employment of attorney as special counsel (Doc. 393), and the declaration of Spitzer in

---

[4] The lead case is case number 13-16155-B-7, *In re Michael Weilert, M.D. and Genevieve M. de Montremare*.

[5] See (Doc. 393).

[6] Declaration of Peter Fear (Doc. 503).

support of the application (Doc. 396), were filed with the court (the "Application").  The declaration disclosed Spitzer's representation of Pendragon in the Ranch Litigation and the various bankruptcy proceedings involving these Debtors and their affiliates.  The Application was noticed for hearing to all creditors, including Debtors' counsel, WCT and affiliated attorneys (Doc. 394).[7]  No one appeared in opposition to the Application.  The hearing was continued to July 23, 2015, for submission of additional information requested by the court.  In response, six days before that hearing, the Trustee filed the supplemental declaration of Attorney Spitzer.  On July 23, 2015, the court issued its civil minutes (Doc. 430), which stated as follows:

> "This matter was fully noticed in compliance with the Local Rules and there is no opposition.  Accordingly, the respondent(s) default was entered and the motion was granted without oral argument for cause shown.  The moving party shall submit a proposed order."

The order appointing Attorney Spitzer as special counsel was entered on July 24, 2015 (Doc. 431).  Noticeably absent from the disclosures or the Agreement was a clear and unambiguous statement that Attorney Spitzer was representing Pendragon in a then-potential legal malpractice claim against its former counsel, DAI, relating to DAI's alleged errors and omissions prior to Pendragon's retention of Attorney Spitzer in the Ranch Litigation.

In September 2015, Attorney Spitzer, on behalf of the Bankruptcy Estate, filed a complaint in the State Court commencing the legal malpractice action against Debtors' counsel in the Ranch Litigation, WCT, and some of its affiliated attorneys (the "WCT Malpractice Action").[8]  One month later, Attorney Spitzer undertook formal representation of Pendragon and filed a legal malpractice action in the State Court against Pendragon's former counsel, DAI, and some of its affiliated attorneys.  It is

---

[7] Interestingly, affiliated attorneys with DAI also received notice of this application.

[8] The parties have advised the court that a trial date is scheduled for the WCT action in March 2017.

worth noting that Attorney Spitzer had negotiated a tolling Agreement with DAI much earlier on February 15, 2012.[9]  Attorney Spitzer did not augment his previous disclosures to the bankruptcy court by revealing his representation of Pendragon at or around the time he filed the DAI Malpractice Action in State Court.

In July 2016, Debtors' former counsel, WCT, filed a motion in the State Court to disqualify Attorney Spitzer as counsel in the WCT Malpractice Action.  The hearing was continued to September 13, 2016.  That motion was denied on the grounds that exclusive jurisdiction over employment of professionals in bankruptcy cases rests with the bankruptcy court. Concurrently, Attorney Spitzer filed, with the bankruptcy court, a Second Supplemental Declaration Regarding Trustee's Application for Order Authorizing Employment of Attorney as Special Counsel (Doc. No. 458).  The second supplemental declaration reiterates Attorney Spitzer's role as trial counsel in the Ranch Litigation and states that, as of October 25, 2015, Attorney Spitzer undertook the representation of Pendragon in the DAI Malpractice Action.  Attorney Spitzer claims that he had previously informed the Trustee and his General Counsel of the pendency of the DAI Malpractice Action and neither one has expressed any objection or reservation. This supplemental disclosure, along with the State Court's denial of WCT's motion to disqualify Attorney Spitzer, were the catalysts for this Motion.[10]

## JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) in that this a civil proceeding arising under Title 11 of the United States Code.  The district

---

[9] Attorney Spitzer claims that "no decision" was made to pursue DAI in a formal litigation until early October of 2015 when negotiations broke down.

[10] At oral argument, counsel for WCT raised numerous evidentiary objections to the evidence submitted by Attorney Spitzer.  The court ruled on these objections at oral argument.

court referred this matter to this court pursuant to 28 U.S.C. § 157(a).  The bankruptcy court's authority to hear and determine cases under Title 11 in all core proceedings is derived from 28 U.S.C. § 157(b)(1).  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## ISSUES

This court is being asked, one, to determine whether the Trustee's special counsel, who has been employed to represent the Bankruptcy Estate in a malpractice suit against the Debtors' prior counsel in connection with their representation of Debtors in pre-petition civil litigation, has an actual conflict of interest with the estate based upon:

      a.    Special counsel's prior representation of a creditor in that pre-petition civil action against the Debtors where the judgment has become final;

      b.    Special counsel's representation of the same creditor in a malpractice suit against that creditor's prior counsel in that same pre-petition civil action.

Second, the court is being asked to decide whether Trustee's special counsel should be disqualified because of inadequate disclosure of his connections where those defects have now been remedied.

## ANALYSIS

### I.  Adequacy of Disclosures

#### A.    Requirements for Appointment

A chapter 7 Trustee is obligated to "collect and reduce to money the property of the estate for which such Trustee serves."  § 704(a)(1).  Subsection (a) of § 327 authorizes the Trustee, "with the court's approval," [t]o "employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist Trustee in carrying out the Trustee's duty under this title."  Section 101(14)(A) defines a "disinterested person" to include a person who "is not a creditor, an equity security holder, or an insider."  A person who is not disinterested as that term is defined in § 101(14) is disqualified from acting as a professional for the estate.  *In re Capitol Metals Co., Inc.*, 228 B.R. 724, 726-27 (9th Cir.

8

1  BAP 1998).

2      Section 327 generally "imposes the 'disinterested' requirement on all general and

3  special counsel employed under that section . . . ." *In re Maximus Computers, Inc.*, 278

4  B.R. 189, 196 (9th Cir. BAP 2002).  The applicant bears the burden of proving the

5  "standards for appointment have been met." *In re Capitol Metals*, 228 B.R. at 727.

6  Section 327(a) has been interpreted "to mean the attorney must not represent an adverse

7  interest relating to the services which are to be performed by that attorney." *In re*

8  *Fondiller*, 15 B.R. 890, 892 (9th Cir. BAP 1981).

9      In this case, Attorney Spitzer has been appointed as special counsel to represent

10  the Trustee against the Debtors' former counsel in the WCT Malpractice Action.

11  Attorney Spitzer must be, both, disinterested, and, not hold or represent an interest

12  "adverse to the estate."  First, Attorney Spitzer is disinterested according to the

13  "disinterested person" definition,.  He is not, himself, a creditor, an equity security

14  holder, or an insider of any of the debtor entities.  He has not been, and was not within

15  two years before the filing date, a director, officer, or employee of the debtor.  He does

16  not have an interest materially adverse to the interest of the estate or to any class of

17  creditors, or equity security holders, by reason of any direct or indirect relationship to,

18  connection with, or interest in the debtor, or "for any other reason."  No party has

19  brought to the court's attention any allegation that Attorney Spitzer himself has an

20  interest materially adverse to the Bankruptcy Estate other than the previously approved

21  Agreement for his services to the Trustee as special counsel.  Attorney Spitzer's prior

22  relationship with the Debtors was as an advocate adverse to the Debtors in the pre-

23  petition Ranch Litigation.  No party has, however, brought to the court's attention any

24  issue regarding a personal interest that Attorney Spitzer has that is adverse to the

25  Bankruptcy Estate or to the Debtors.

26      Second, Attorney Spitzer does not possess an "adverse interest" to the Bankruptcy

27  Estate.  A generally accepted definition of "adverse interest" is, (1) the possession or

28  assertion of an economic interest that would tend to lessen the value of the Bankruptcy

9

1    Estate; or (2) possession or assertion of an economic interest that would create either an

2    actual or potential dispute in which the Bankruptcy Estate is the rival claimant; or (3)

3    possession of a predisposition under circumstances that create a bias against the

4    Bankruptcy Estate.  *Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 148-49 (9th

5    Cir. BAP 2006).  Other than his contingency fee contract represented by the Agreement,

6    Attorney Spitzer does not possess or assert an economic interest tending to lessen the

7    value of the Bankruptcy Estate.  WCT claims that, because Pendragon has the DAI

8    Malpractice Action, currently pending in State Court, against its former counsel,

9    Pendragon and the Bankruptcy Estate may be rival claimants to the same damages.  For

10   reasons indicated below, such a situation appears at this time to be unlikely and does not

11   rise to an "adverse interest" that would disqualify Attorney Spitzer.  Finally, there is no

12   evidence that Attorney Spitzer possesses a predisposition creating a bias against the

13   estate.

14        B.    Sufficiency of Disclosures

15        To enable a bankruptcy court to evaluate an attorney's potential employment,

16   Rule 2014(a) requires that an application for employment of an attorney under section

17   327 shall be accompanied by a verified statement of the person to be employed setting

18   forth "all of the person's connections with the debtor, creditors, any other party in

19   interest, their respective attorneys and accountants, the United States trustee, or any

20   person employed in the office of the United States trustee."  This disclosure requirement

21   is applied "strictly."  *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995).

22   Pursuant to the disclosure rules, the attorney has the duty to disclose all relevant

23   information to the court and may not exercise any discretion to withhold information.

24   See*, Park-Helena*, 63 F.3d at 882;  *In re Thomas*, 476 B.R. 579, 586 (N.D.Cal. 2012).

25   "The purpose of such disclosure is to permit the bankruptcy court and parties in interest

26   to determine whether the connection disqualifies the applicant from the employment

27   sought, or whether further inquiry should be made before deciding whether to approve

28   the employment.  This decision should not be left to counsel, whose judgment may be

10

clouded by the benefits of the potential employment." *In re Lee*, 94 B.R. 172, 176 (Bankr.C.D. Cal., 1988). The duty to disclose extends to "all facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate" regardless of whether the attorney thinks the information is sufficient to render him adversely interested. *Park-Helena*, 63 F.3d at 882. "Negligent or inadvertent omissions do not vitiate the failure to disclose," and such a failure "may result in a denial of all requested fees." *Id.* at 881-82.

In this case, the challenges to the sufficiency of disclosure relate to three specific events. First, the original disclosure dated June 9, 2015, accompanying the Trustee's application to employ Attorney Spitzer (Doc. No. 396). Second, the supplemental declaration of Attorney Spitzer dated July 16, 2015 (Doc. No. 428), in which Attorney Spitzer responded to Judge Lee's requests for additional information. The third is the second supplemental disclosure by Attorney Spitzer dated August 17, 2016, (Doc. No. 458) which prompted this disqualification litigation. The court will discuss each in turn.

### 1.    Initial and First Supplemental Disclosures

WCT, Debtors' counsel in the Ranch Litigation in State Court and the defendant in the WCT Malpractice Action filed by the Trustee, contends that Spitzer's initial disclosures were completely inadequate. Specifically, WCT argues that the initial disclosures did not state clearly that Attorney Spitzer was trial counsel in the Ranch Litigation. In addition, WCT contends that the initial disclosure was misleading in not revealing Attorney Spitzer's ongoing representation of Pendragon in the DAI Malpractice Action against Pendragon's former counsel in the Ranch Litigation.[11] Additionally, WCT contends that Attorney Spitzer improperly described the then-pending DAI Malpractice Action, in which he represented Pendragon, as "a collection

/ / / / /

/ / / / /

---

[11] DAI was predecessor counsel to Attorney Spitzer in the Ranch Litigation.

11

1    action."[12]

2        The initial disclosures were served on all creditors, including WCT.[13]  There was

3    no objection.  The initial disclosures revealed that Attorney Spitzer represented

4    Pendragon who was the largest creditor in the Debtors' bankruptcy case.  The initial

5    filings included the Agreement which contained a conflict waiver for Spitzer's

6    representation of Pendragon in the Ranch Litigation against the Debtors.  Attorney

7    Spitzer also disclosed, to the Trustee and the Trustee's general counsel, the potential

8    conflicts including Spitzer's potential role as a witness in the WCT Malpractice Action

9    and that the Trustee had determined (along with the Trustee's General Counsel) that

10   there were no actual conflicts.  In response to Judge Lee's inquiry, Spitzer submitted a

11   supplemental declaration on July 16, 2015, which outlined the claims against WCT

12   including alleged negligent estate planning services and negligent handling of the Ranch

13   Litigation and that Attorney Spitzer, on behalf of the Bankruptcy Estate, would seek

14   disgorgement of $500,000 of WCT's fees paid to it by the Debtors.

15       The initial (and supplemental) disclosures were inadequate in Attorney Spitzer's

16   failure to mention his ongoing representation of Pendragon in the DAI Malpractice

17   Action against Pendragon's predecessor counsel.  It was not until WCT filed the motion

18   to disqualify Spitzer in the State Court (which the State Court did not decide on the

19   merits) that additional disclosures were filed in this case and Spitzer's representation of

20   Pendragon in the DAI Malpractice Action was manifest.

21       Attorney Spitzer did reveal his representation of Pendragon in specific matters

22   and the disclosure encompassed his representation of Pendragon in the Ranch Litigation

23   which, logically would include his success in that matter.  Presumably, Judge Lee was

24

25

26   [12] WCT also contends the disclosure was not adequate in noting that Attorney Spitzer
     could be a "witness" in the malpractice action against WCT.  The "witness conflict" will be
27   discussed in detail below.  The disclosure will be discussed here.

28   [13] See (Doc. No. 394).

1  aware of those facts since Spitzer represented Pendragon in a motion to dismiss the

2  earlier chapter 11 case filed by the Weilert Family Limited Partnership.[14]

3         However, no party in interest objected at the time the initial disclosures were

4  filed.  Other than the DAI Malpractice Action, all facts were presented to the court

5  including recommendations of the Trustee and his General Counsel.

6

7            2.    Later Disclosure of the DAI Malpractice Litigation Connection

8         Counsel is obligated to make full and candid disclosure regardless of  how

9  irrelevant or trivial those connections may seem.  See, *In re Mehdipour*, 202 B.R. 474,

10  480 (9th Cir. 1996).  Failure to comply with disclosure requirements may result in

11  employment being denied or revoked, or other sanctions imposed "even if proper

12  disclosure would have shown that the attorney had not actually violated any Bankruptcy

13  Code provision or any Bankruptcy Rule."  *Park-Helena*, 63 F.3d at 880.  The duty of

14  disclosure is ongoing.  *In re West Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005).

15  The penalty for nondisclosure is within the bankruptcy court's discretion and can range

16  from nothing, as in *First Interstate Bank of Nevada , N.A. v. CIC Inv. Corp. (In re CIC*

17  *Inv. Corp.)* 175 B.R. 52, 54 (9th Cir. BAP 1994), to disallowance of all fees.  *Park-*

18  *Helena*, 63 F.3d at 882.

19         Here, there is a clear failure by Attorney Spitzer to seasonably disclose his

20  ongoing representation of Pendragon, against its former counsel, in the DAI Malpractice

21  Action.  This litigation is related to the Bankruptcy Estate's claim, against Debtors'

22  former counsel, in the WCT Malpractice Action.  The second supplemental declaration

23  of Attorney Spitzer (Doc. 458) was not filed until late in these proceedings.  In the

24  second supplemental declaration, Attorney Spitzer states he undertook the representation

25  in October of 2015.  He also states that he had previously informed the Trustee.[15]

26  ————————————

27       [14] See case number 13-14036, (Doc. No. 29).

28       [15] Second Supplemental Declaration of Attorney Spitzer, (5:22-24).

13

1    Attorney Spitzer also states he "believes" that the representation of Pendragon against

2    DAI has "no relevance" to the WCT Malpractice Action and that, in "his opinion," it

3    does not pose a conflict and that "allegations against [DAI] do not contradict the

4    allegations in the action against WCT."[16]

5            First, it is not up to the professional to decide which connections should be

6    disclosed.  Second, negligent or inadvertent disclosures are not excused under *Park-

7    Helena*.  Third, Attorney Spitzer's position, that failure to promptly disclose the DAI

8    Malpractice Action connection was somehow inadvertent, strains credulity.  Attorney

9    Spitzer admitted that, after being appointed as the estate's special counsel for litigation

10   against WCT, Attorney Spitzer negotiated four separate tolling agreements with DAI.

11   This court simply does not believe that inadvertence explains the failure to disclose

12   Attorney Spitzer's continuing engagement in litigation that is closely related to the

13   Bankruptcy Estate's malpractice claim against WCT.  Rather, it appears to be either

14   hubris or a mistake of law, neither of which is a defense for failing to make timely

15   disclosures.

16           A court has considerable discretion, once the true facts are known, on how to

17   address the lack of disclosure.  *In re Film Adventures International*, 75 B.R. 250, 253

18   (9th Cir. BAP 1987); *In re Lewis*, 113 F.3d 1040, 1045-6 (9th Cir., 1997).  The

19   bankruptcy court has discretion to excuse the failure to disclose.  *CIC Inv. Corp.*, 175

20   B.R. at 54.  If the bankruptcy court finds there is no need for remedial measures, it

21   appropriately can  excuse the failure in the exercise of this discretion.  *Id.* citing *In re*

22   *Film Adventures International*, 75 B.R. at 253.

23           Here, the court will excuse Attorney Spitzer's failure to disclose.  First, Spitzer's

24   late disclosure has served the purpose of the disclosure requirements in this case.  WCT

25   has now filed two motions to disqualify, one in the State Court and one in this court.

26   There has been vigorous argument over Attorney Spitzer's continuing service as special

27   _____

28       [16] *Id.* at 6:4-9.

counsel.  Second, according to the original documents filed in support of Attorney
Spitzer's appointment, it was extremely difficult to locate counsel willing to accept the
WCT Malpractice Action on a contingency basis.  A trial date is imminent and the
Bankruptcy Estate's position would be prejudiced by the disqualification of Attorney
Spitzer, for failure to disclose, when the purpose of the disclosure requirements has now
been served.[17]

The court is confident that the able counsel on this Motion have presented all of
the facts to the court upon which it may assess the motion to disqualify on the grounds of
inadequate disclosure.  While Attorney Spitzer's initial disclosure of connections was
wholly inadequate, the subsequent disclosure and attendant litigation on this motion
resolves any prejudice.  Given the potential harm to the estate, the facts militate in favor
of this court excusing the disclosure at this time.

## II.    Alleged Conflicts of Interest.

### A.    General Standards

Under § 327(c), a person is not disqualified for employment solely because of
such person's employment by or representation of a creditor unless there is an objection
by another creditor or the United States trustee, in which case the court shall disapprove
such employment if there is an actual conflict of interest.  There need only be no conflict
between the Trustee and counsel's creditor client with respect to the specific matter itself
when a special counsel is appointed for a specific matter.  *Stoumbos v. Kilimnik*, 988
F.2d 949, 964 (9th Cir., 1993).  "Thus, where the interest of the special counsel and the
interest of the estate are identical with respect to the matter for which special counsel is

---

[17] To be sure, as argued by WCT, trial dates can be continued and schedules changed to
accommodate new counsel.  The prejudice suffered by the estate would be substantial.
Successor counsel, even if willing, would not have the familiarity with the case that Attorney
Spitzer does.  Also, it is speculative that the Superior Court would accommodate a plaintiff who
has to change counsel so late in the process.

1    retained, there is no conflict and the representation can stand." *In re AroChem Corp.*,
2    176 F.3d 610, 622 (2nd Cir., 1999). Where attorneys are employed by both the Trustee
3    and a creditor, there is no actual conflict of interest warranting disqualification unless (i)
4    the interest of the trustee and the creditor are in fact directly conflicting or (ii) the
5    creditor is actually afforded a preference that is denied other creditors. *Johnson v.*
6    *Richter, Miller & Finn. (In re Johnson)*, 312 B.R. 810, 822 (DC E.D.Va, 2004). An
7    attorney's representation of a creditor does not *per se* deprive that attorney of
8    "disinterested" status, but rather becomes a potential disqualifier for employment to
9    represent the Trustee on the conceptually distinct theory of actual conflict of interest. *In*
10   *re Kobra Properties*, 406 B.R. 396, 403 (Bankr.E.D.Cal., 2009). The actual conflict of
11   interest occurs between jointly represented clients "whenever their common lawyer's
12   representation of the one is rendered less effective by reason of his representation of the
13   other." *Blecher & Collins v. Northwestern Airlines, Inc.*, 858 F.Supp. 1442 (C.D.
14   California, 1994). In determining the existence of a conflict of interest, the bankruptcy
15   court does not ignore rules of professional conduct governing attorneys. State rules of
16   professional responsibility do apply as long as they do not conflict with the bankruptcy
17   code or the bankruptcy rules. *AFI Holding*, 355 B.R. at 153 n.15.

18        WCT contends that Attorney Spitzer has a conflict of interest in representing the
19   estate for essentially three reasons. First, that Spitzer's representation of Pendragon in
20   the Ranch Litigation against the Debtors, and of the Trustee against Debtors' former
21   counsel in the WCT Malpractice Action, results in a conflict because Attorney Spitzer
22   may need to utilize confidential information received from his client (Pendragon) in
23   pursuing the action against WCT.[18] Second, that Spitzer may be called as a witness in
24   the WCT Malpractice Action. Third, that Attorney Spitzer's concurrent representation
25   of Pendragon against their former counsel in the DAI Malpractice Action results in

26

27        [18] As noted below, the "holder" of that privileged information, Pendragon, is not
28   prosecuting the Motion.

16

1  "factual" conflicts.  These "factual conflicts" arguably stem from inconsistent positions

2  Spitzer will theoretically advocate in the WCT and DAI Malpractice Actions.  These

3  claims are discussed below.

4

5          B.    <u>Alleged Conflict in Current Representation of the Bankruptcy Estate and</u>
   <u>Former Representation of Pendragon in the Ranch Litigation Against the</u>

6  <u>Debtors</u>

7         The interests of Pendragon and the estate are not in direct conflict as a result of

8  Attorney Spitzer's successful representation of Pendragon in the pre-petition Ranch

9  Litigation against the Debtors.  As a result of that litigation, Pendragon became a

10 creditor in this bankruptcy case.[19]  The interests of Pendragon and the Trustee are aligned

11 in that, the more the Trustee can recover, the larger distribution Pendragon will receive

12 from the assets of the Bankruptcy Estate.

13        Second, WCT most likely waived any objection to Attorney Spitzer's appointment

14 by failing to object at the time of Attorney Spitzer's Application. WCT received notice

15 of the Application and no objection was filed.

16        Third, any conflict arising as a result of Attorney Spitzer's representation of

17 Pendragon in the Ranch Litigation was waived by the Trustee through his General

18 Counsel and the Application was noticed to all creditors before Attorney Spitzer was

19 appointed.  California Rule of Professional Conduct 3-310(c) provides in part:

20       "A member shall not, without the informed written consent of each client:
   (1) Accept representation of more than one client in a matter in which the

21       interest of the clients potentially conflict; or

22       (2) Accept or continue representation of more than one client in a matter in
   which the interests of the clients actually conflict; or

23

24       (3) Represent a client in a matter and at the same time in a separate matter
   accept as a client a person or entity whose interest in the first matter is
   adverse to the client in the first matter."

25

26 Bankruptcy cases have applied these Rules.  See, *In re Jaeger*, 213 B.R. 578, 583

27

28     [19] WCT is also a creditor in this bankruptcy case.

1  (Bankr.C.D. Cal. 1997); *In re Lee*, 94 B.R. at 177-78.

2      While the policy of section 327(a) requires a professional to give undivided

3  loyalty to the client, this requirement may be waived in appropriate cases if the parties in

4  interest so desire.  *In re Wheatfield Business Park  LLC*, 286 B.R. 412, 423

5  (Bankr.C.D.Cal., 2002).  Here, the Trustee has the benefit of General Counsel.  When

6  the Trustee discovered the potential claim against WCT, he sought representation for

7  several months without success.  When the Trustee decided to retain Attorney Spitzer,

8  the Trustee and his General Counsel reviewed the Agreement.  No creditor (including

9  WCT) objected to the Application.  According to the evidence, the Trustee was made

10  aware of the potential conflict issues and the Trustee and his General Counsel

11  determined there were none that would justify the disqualification of Attorney Spitzer.

12      Fourth, no present actual conflict from Spitzer's sequential representations has

13  been described by WCT.  WCT cites *People ex rel. Dept. of Corp. v. SpeeDee Oil*

14  *Change Systems, Inc.*, 20 Cal. 4th 1135, 86 Cal. Rptr.2d 816 (1999).  This case is not

15  controlling because there, the same law firm represented (albeit fleetingly) both the

16  plaintiff and the defendant in the same litigation which resulted in a *per se*

17  disqualification.  In fact, the California Supreme Court stated that on a disqualification

18  motion, a court must balance such varied interests, as the party's right to chosen counsel,

19  the interest in representing a client, the burden placed on the client to find new counsel,

20  and the possibility that tactical abuse underlies the disqualification motion.  *Id.* at 1145.

21  This is not a situation where Attorney Spitzer is representing both the plaintiff (the

22  estate) and the defendant (WCT) in the same action which was the situation in *SpeeDee*

23  *Oil*.  At oral argument, WCT's counsel emphasized that it is possible the State Court will

24  consolidate the malpractice case against WCT and the case against DAI for trial.  That,

25  of course, is speculative at this moment and is not a present disqualifying conflict.  Even

26  if the malpractice cases are consolidated, no *per se* conflict would result as discussed in

27  this Memorandum.

28      WCT also cites *State Farm Mutual Automobile Insurance Company v. Federal*

1   *Insurance Company*, 72 Cal. App.4th 1422; 86 Cal.Rptr.2nd 20 (1999) arguing Attorney

2   Spitzer's intimate involvement with the Ranch Litigation against the debtor disqualifies

3   him here.  The *State Farm* case is not persuasive.  There, a law firm represented two

4   insurance companies.  In one matter, the law firm represented insurance company A who

5   had a coverage dispute with insurance company B.  Simultaneously, the law firm

6   represented at least one of insurance company B's insureds in defense of a  matter.

7   Because of the concurrent adverse representation of both insurance companies, the

8   California Court of Appeal reversed a trial court ruling denying the motion to disqualify.

9   Here, Attorney Spitzer's representation of Pendragon in the prior law suit against the

10  debtor is not concurrent adverse representation to the Bankruptcy Estate.  At no time

11  during the course of the Ranch Litigation against these Debtors did Spitzer represent the

12  estate and, as indicated above, the interest of Pendragon and the estate are aligned in the

13  attempting to maximize recovery for creditors.  For these independent reasons, there is

14  no present actual conflict.

16          C.      The Alleged "Witness" Conflict

17          WCT claims that Attorney Spitzer will need to testify in the WCT Malpractice

18  Action concerning WCT's alleged negligence in representing the Debtors in the Ranch

19  Litigation.  However, the declarations filed in support of the Motion outlined no scenario

20  where Attorney Spitzer would be called as a witness.  Rather, WCT posits the argument

21  that it is "likely" Attorney Spitzer will be called as a witness.

22          Because the advocate-witness rule lends itself to "potential for abuse," motions to

23  disqualify under this rule should be subjected to particularly strict judicial scrutiny.

24  *Optyl Eyewear Fashion International Corp. v. Style Companies Limited*, 760 F.2d. 1045,

25  1050 (9th Cir., 1985).  To be justified, a motion to disqualify must be based on present

26  concerns and not concerns which are merely anticipatory and speculative.  *In re*

27  *Coordinated Pre-trial Proceedings, etc.*, 658 F.2d 1355, 1361 (9th Cir. 1981).  "A

28  necessary witness is not the same thing as the 'best' witness.  If the evidence that would

1   be offered by having an opposing attorney testify can be elicited through other means,

2   then the attorney is not a necessary witness.  In addition, of course, if the testimony is not

3   relevant or is only marginally relevant, it certainly is not necessary."  *Harter v.*

4   *University of Indianapolis*, 5 F.Supp.2d 657, 665 (S.D. Indiana, 1998).  California Rule

5   of Professional Conduct 5-210 provides as follows:

6       A member shall not act as an advocate before a jury which will hear testimony
        from the member unless:

7

8       (a)    the testimony relates to an uncontested matter; or

9       (b)    the testimony relates to the nature and value of legal services rendered in
               the case; or

10      (c)    the member has the informed, written consent of the client . . . .

11      Assuming that the malpractice litigation against WCT will involve a jury trial, a

12  clear exception to the advocate witness rule is the informed, written consent of the client.

13  Here, the Agreement reveals Spitzer's potential role as a witness, even though, that

14  likelihood seems very remote.  Both the Trustee and his general counsel reviewed that

15  remote possibility and determined that the estate would not be harmed by the retention of

16  Attorney Spitzer.

17      Second, again, WCT did not oppose the appointment of Attorney Spitzer and

18  received notice of his uncontested appointment.

19      Third, it is self evident that the Trustee will likely not call attorney Spitzer as a

20  witness.  That leaves the possibility that WCT will call Attorney Spitzer as a witness.

21  However, there is nothing in the declaration supporting the Motion suggesting that

22  Attorney Spitzer would offer evidence that would be other than cumulative.

23      WCT relies on *Kennedy v. Aldridge*, 201 Cal.App 4th 1197, 1201; 135 Cal.Rptr.

24  3d 545 (2011), to support its position.  That case is inapposite.  The Court of Appeal in

25  *Kennedy* noted that there was a "near certain prospect" that the disqualified counsel

26  would have to testify in the litigation at issue.  *Id.* at 1200.  The evidence in *Kennedy* was

27  that the attorney had deep family entanglements involving that attorney's adversary.

28  Those entanglements were such that the attorney was in a position to acquire confidential

20

1   information from that attorney's opponent.  In this case, there is no risk that Attorney

2   Spitzer acquired confidential information from WCT.  WCT was Attorney Spitzer's

3   adversary in the underlying case.

4           In short, WCT has provided no factual basis for the court to conclude that

5   Attorney Spitzer will be a witness in the malpractice case against WCT.  Putting aside

6   that issue, the affirmative waiver by the Trustee and the waiver by WCT in failing to

7   object to the appointment of Attorney Spitzer all militate in favor of finding no conflict

8   of interest due to the "advocate-witness" rule in this case.

9

10          D.      Alleged "Factual" Conflicts of Interest in Prosecuting DAI Malpractice
                    Action
11

12          WCT vigorously argues that various factual positions that Attorney Spitzer must

13  necessarily take in the WCT Malpractice Action will conflict with his loyalty to

14  Pendragon in prosecuting its action against Pendragon's former counsel, DAI.  These

15  conflicting loyalties will harm the Bankruptcy Estate, according to WCT, and necessitate

16  disqualification of Attorney Spitzer.  Among the evidence submitted in the Trustee's

17  opposition to this Motion was the third amended complaint filed in the Fresno County

18  Superior Court in the DAI Malpractice Action (*Gwartz, et al. v. Dowling, Aaron et al.*).[20]

19          According to the allegations of the third amended complaint, DAI represented

20  Pendragon between July 2008 and April 2011 when DAI withdrew.  Attorney Spitzer

21  was Pendragon's successor counsel.  Pendragon alleges DAI was retained for advice

22  concerning permitting and the repair of buildings on the Ranch.  Pendragon allegedly did

23  not wish to litigate and retained DAI to represent Pendragon's interest in land use and

24  construction issues.  Pendragon alleges that its trustee, Gwartz, has suffered emotional

25  distress as a result of delays that were allegedly caused by DAI's negligence.  Pendragon

26  alleges that DAI inflated its attorney's fees and did not properly pursue mediation of the

27  _____

28          [20] Fresno County Superior Court case number 15-CECG03230.

21

1   dispute before the Ranch Litigation began to spiral.  Attorney Spitzer took the case from

2   DAI and prosecuted the Ranch Litigation against the Debtors to a successful conclusion

3   resulting in a jury verdict of $1,553,800 against the Debtors.  Of that judgment, $850,000

4   was for punitive damages.

5       WCT argues that the estate's litigation position is that WCT's attorney's fees paid

6   by Debtors should be disgorged to the estate because various alleged WCT errors

7   exacerbated the damages awarded against the Debtors.  Accordingly, Attorney Spitzer

8   will have to argue a position contrary to the one previously urged by Pendragon in the

9   Ranch Litigation.  WCT also argues that to prevail in the WCT malpractice action,

10  Attorney Spitzer will have to argue compensatory damages should have been less than

11  what was awarded Pendragon by the jury but for the alleged malpractice of WCT thereby

12  refuting the argument that WCT made on behalf of the Debtors at the trial.  In the DAI

13  malpractice action, Pendragon alleges they were damaged because they were told by DAI

14  that the Debtors did not want to mediate the case when in reality DAI received an early

15  demand for mediation.  However in the action against WCT, Trustee alleges that WCT

16  refused to mediate thereby subjecting the Debtors to proliferating attorney's fees.  In

17  addition, in the DAI malpractice action, it is claimed that DAI improperly included a

18  breach of contract claim drawing excessive pleading motions thereby escalating

19  Pendragon's attorney's fees.  In contrast, the estate will need to take the position that the

20  numerous pleading challenges were imprudent and increased the Debtors' attorney fees.

21      The Trustee and Attorney Spitzer dispute these arguments.  They argue that there

22  is no inconsistency between the position to be taken in the WCT Malpractice Litigation

23  on behalf of the estate or in the DAI Malpractice Litigation on behalf of Pendragon.  The

24  estate may argue certain tactical errors by WCT including reliance on Dr. Weilert's

25  credibility, contributed to the adverse verdict. According to Attorney Spitzer, there were

26  grounds for challenging the punitive damage award on appeal which could have led to

27  reversal.  One of those challenges would be that the punitive damage award resulted

28  from the passion and prejudice of the jury.  Attorney Spitzer and the Trustee also argue

1    that there is no conflict with respect to the matter for which Attorney Spitzer is employed

2    for the estate because Spitzer is no longer representing Pendragon in any litigation

3    against these Debtors.

4         The conflicts alleged to exist by WCT are speculative. So are the responsive

5    arguments by the Trustee and Attorney Spitzer.  On a disqualification motion, this court

6    is not asked to speculate about trial strategy or evidence theories in litigation that is to be

7    tried.  Rather, under *Stoumbos*, there need only be no conflict between the Trustee and

8    counsel's creditor client with respect to this specific matter itself.  *Stoumbos*, 988 F.2d at

9    964 citing *Fondiller*, 15 B.R. at 892, *appeal dismissed*, 707 F.2d 441 (9th Cir. 1983); *see*

10   *also Altenberg v. Schiffer (In re Sally Shops, Inc.)*, 50 B.R.  264, 266 (Bankr.E.D.Pa.

11   1985) (following *Fondiller*).

12        While not clear in the Ninth Circuit, even those courts which analyze counsel

13   appointments as either involving "potential" conflicts of interest or "actual" conflicts of

14   interest and determine based on that dichotomy whether counsel is disqualified, would

15   likely find against disqualification in this case.  See, *In re American Printers &*

16   *Lithographers, Inc.*, 148 B.R. 862, 867 (Bankr.N.D.Ill 1992)[potential conflict of the law

17   firm representing creditor bank precluded firm's representation of the debtor in

18   possession because the firm was not disinterested due to a close relationship with, and

19   financial dependence on creditor bank]; *In re Empire State Conglomerates, Inc.*, 564

20   B.R. 306, 315 (Bankr.S.D.N.Y., 2016) quoting *In re Diva Jewelry Design, Inc.*, 367 B.R.

21   463, 472 (Bankr.S.D. N.Y. 2007)[an actual conflict of interest under [11 U.S.C. §

22   327(c)] is "an active competition between two interests, in which one interest can only

23   be served at the expense of the other."].  See also, *Lennear v. Diamond Pet Food*

24   *Processors of California, LLC*, 147 F.Supp.3d 1037, 1050-52 (E.D. California,

25   2015)[counsel for debtor in pending civil rights action does not have an adverse interest

26   warranting disqualification when he is representing the Trustee in the same action].  The

27   "potential" conflicts of interest raised by WCT in the Motion may not become conflicts

28   at all.  Based upon the evidence before this court, the potential for these conflicts to arise

23

seems remote.

Independently, the court cannot ignore that Pendragon itself is silent in these proceedings and is not pursuing the disqualification of Attorney Spitzer. Indeed, one of the trustees of the trust, also an attorney, submitted a declaration supporting the continued employment of Attorney Spitzer.[21] The Trustee's General Counsel has also weighed in, stating under oath that, after his examination of the complaint against DAI, he sees no possible conflict of interest between Pendragon and the Trustee with regard to the allegations of that complaint.[22]

Turning specifically to the alleged factual conflict resulting from Attorney Spitzer having to take incongruent positions on the damages recovered by Pendragon in the Ranch Litigation, there is no requirement that the compensatory damage component be challenged in the WCT malpractice action. Eight hundred fifty thousand dollars ($850,000) of the verdict in the Ranch Litigation was for punitive damages. The Trustee's position asserting alleged negligence by WCT in not appropriately seeking review of that award is not inconsistent with the position in the Ranch Litigation, that compensatory damages should have been awarded, or, for that matter, some punitive damages either. Further, even if there was a logical inconsistency, that "conflict" was waived early in the case.[23]

Alleged inconsistent positions that may be argued in the DAI Malpractice Action is also not an actual conflict for purposes of Section 327(c). The allegations in the

---

[21] (Doc. No. 502.)

[22] (Doc. No. 503.)

[23] At oral argument, WCT's counsel argued damages caused by counsel's alleged negligence is a pre-requisite to the estate's recovery. To be sure, some loss must stem from negligence. But, counsel's reference at oral argument to *Marshak v. Ballesteros*, 72 Cal.App.4th 1514, 1518; 86 Cal.Rptr.2d 1 (1999) is misplaced. *Marshak*, a "settle and sue" case, held damages cannot be speculative and summary judgment was appropriate. Here, damages are "real" in that a verdict and judgment has been entered. Nothing in *Marshak* suggests a single theory of damages must be pursued in all legal malpractice cases.

1  amended complaint against DAI relate to actions taken long before Attorney Spitzer took

2  the underlying matter to trial. Thus, the claims are temporally remote.  Two of the

3  potential factual paradoxes emphasized by WCT in the Motion, improper pleading

4  leading to numerous demurrers, and alleged mishandling of a mediation demand, are

5  speculative "conflicts" if at all.  There is no opposing or supporting evidence in the

6  Motion that the numerous demurrers WCT filed and prosecuted as well as other

7  challenges to the pleading were negligent or that this will be the estate's position in the

8  malpractice case.  The mediation issue is contrived.  WCT claims there is an actual

9  conflict because, on the one hand, in the WCT action Attorney Spitzer will need to argue

10  that WCT's refusal to mediate caused the Debtors' damage and, on the other hand, that

11  DAI's mishandling of the mediation demand caused Pendragon damage.  Nothing would

12  prevent either side from agreeing to mediate at any moment in the Ranch Litigation

13  which seems to negate any factual conflict between the two actions.  Further, the

14  apparent focus of the WCT malpractice action relates to a failure to mediate long after

15  DAI's alleged errors.[24]

16

17                                **CONCLUSION**

18        The disclosures made by Attorney Spitzer and the Trustee, with the exception of

19  the ongoing representation of Pendragon in the DAI matter, are adequate.  For the

20  reasons indicated, the court exercises its discretion and excuses that failure to disclose

21  with a stern warning to counsel.  No actual conflict of interest sufficient to warrant

22  disqualification under Section 327(c) has been established by WCT.  Thus, for now,

23  Attorney Spitzer remains qualified to act a special counsel for the estate in the WCT

24  _____

25    [24] The court is aware that some courts find a presumption of sorts that a potential conflict
      will ripen into an actual conflict and are therefore disqualifying: *In re BH&P, Inc.*, 949F.2d
26    1300 (3rd Cir. 1991); *In re Stamford Color Photo, Inc.*, 98 B.R. 135, 137-38 (Bankr.D.Conn.
      1989); *Matter of Codesco, Inc.* 18 B.R. 997, 999 (Bankr.S.D. N.Y., 1982).  However, this court
27    has not been directed by the parties and has not found any example of such a presumption
      arising under controlling Ninth Circuit law.
28

                                    25

matter.  The court notes, however, that failures to disclose may result in the disallowance
of all fees or the removal of counsel.  *In re Helena-Park Corp.*, 63 F.3d at 882.
Should subsequent events result in this court having to review the qualifications of
special counsel in this matter again, the court reminds counsel and the Trustee of the
panoply of remedies the court can impose.  See *Park-Helena*.

      The motion to disqualify will be DENIED.  A separate order shall issue.

**Dated:** Dec 08, 2016

**By the Court**

René Lastreto II, Judge
United States Bankruptcy Court

26

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and  **X**  Other Persons Specified Below:

Peter L. Fear, Esq.
Attorney at Law
7650 N. Palm Avenue, Suite 101
Fresno, CA 93711

Marshall C. Whitney, Esq.
Attorney at Law
PO Box 28912
Fresno CA 93729-8912

Mandy L. Jeffcoach, Esq.
Attorney at Law
PO Box 28912
Fresno CA 93729-8912

Daniel B. Spitzer, Esq.
Attorney at Law
16311 Ventura Blvd #1200
Encino CA 91436-2152

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721